IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

CRAIG SCHULTZ,

        Plaintiff,

vs.

SOUTHWEST CREDIT SYSTEMS, LP,

        Defendant.

No. 16-CV-2033-LRR

**ORDER**

---

*TABLE OF CONTENTS*

I.    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

II.   *RELEVANT PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . . *2*

III.  *SUBJECT MATTER JURISDICTION* . . . . . . . . . . . . . . . . . . . . . . . . . *2*

IV.  *SUMMARY JUDGMENT STANDARD* . . . . . . . . . . . . . . . . . . . . . . . . . *3*

V.   *RELEVANT FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . *4*

     *A.*     *Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
     *B.*     *Dispute* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
     *C.*     *SWC's Policies* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*

VI.  *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*

     *A.*     *Applicable Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
     *B.*     *Standing* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *10*
     *C.*     *FDCPA* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *14*
          *1.*    *Prerequisites* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *14*
          *2.*    *Section 1692c violation* . . . . . . . . . . . . . . . . . . . . . . . . . *17*
          *3.*    *Bona fide error defense* . . . . . . . . . . . . . . . . . . . . . . . . . *20*
     *D.*     *IDCPA* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *26*
     *E.*     *Damages* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *28*

VII.  *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *29*

## I.  INTRODUCTION

The matters before the court are Plaintiff Craig Schultz's Motion for Summary Judgment ("Schultz Motion") (docket no. 23) and Defendant Southwest Credit Systems, LP's ("SWC") Motion for Summary Judgment ("SWC Motion") (docket no. 25) (collectively, "Motions").

## II.  RELEVANT PROCEDURAL HISTORY

On May 2, 2016, Schultz filed a Complaint (docket no. 2), alleging that: (1) SWC violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692c(c), by demanding payment from Schultz after receiving a written statement from Schultz stating that he refused to pay the alleged debt and requesting that SWC cease communications with him; and (2) SWC violated the Iowa Debt Collection Practices Act ("IDCPA"), Iowa Code § 537.7103(1)(f), by taking an action prohibited by law in connection with its attempt to collect a debt from Schultz.  Schultz seeks statutory and actual damages, as well as attorneys' fees.  On July 1, 2016, SWC filed an Answer (docket no. 6) generally denying liability and asserting affirmative defenses.

On June 21, 2017, Schultz filed the Schultz Motion.  On July 3, 2017, SWC filed the SWC Motion.  On July 12, 2017, SWC filed a Resistance ("SWC Resistance") (docket no. 28) to the Schultz Motion.  On July 25, 2017, Schultz filed a Resistance ("Schultz Resistance") (docket no. 31) to the SWC Motion.  On that same date, Schultz filed a Reply ("Schultz Reply") (docket no. 32) in support of the Schultz Motion.  SWC has not filed a reply in support of the SWC Motion and the time for doing so has passed.  Neither party requests oral arguments on the Motions, and the court finds that oral arguments are unnecessary.  The matters are fully submitted and ready for decision.

## III.  SUBJECT MATTER JURISDICTION

The court has original jurisdiction over the FDCPA claim because it arises under the United States Code.  *See* 28 U.S.C. § 1331 ("The district courts shall have original

2

jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has supplemental jurisdiction over the IDCPA claim because it is so related to the claims within the court's original jurisdiction that it forms part of the same case or controversy. *See* 28 U.S.C. § 1367(a) ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ."). In other words, "the federal-law claims and state-law claim[] in the case 'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'" *Kan. Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 77 F.3d 1063, 1067 (8th Cir. 1996) (second alteration in original) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349 (1988)).

## IV. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is proper 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show'" an absence of a genuine dispute as to a material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting Fed. R. Civ. P. 56(c)(2)). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Amini v. City of Minneapolis*, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252 (1986)). "The movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson*, 643 F.3d at 1042 (alterations in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant has done so, "the nonmovant must respond by submitting

3

evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex Corp.*, 477 U.S. at 324).

On a motion for summary judgment, the court must view the facts "in the light most favorable to the nonmoving party." *Id.* (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial," and summary judgment is appropriate. *Ricci*, 557 U.S. at 586 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts' . . . ." *Torgerson*, 643 F.3d at 1042 (quoting *Matsushita*, 475 U.S. at 586). Instead, "[t]o survive a motion for summary judgment, the nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.'" *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 801 (8th Cir. 2011) (second and third alterations in original) (quoting *Putman v. Unity Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003)). Mere "self-serving allegations and denials are insufficient to create a genuine issue of material fact." *Anuforo v. Comm'r of Internal Revenue*, 614 F.3d 799, 807 (8th Cir. 2010).

## V. RELEVANT FACTUAL BACKGROUND

Viewing the evidence in the light most favorable to the nonmoving parties, and affording them all reasonable inferences, the uncontested material facts are as follows.

### A. Parties

Schultz is an individual residing in Chickasaw County in the State of Iowa during all relevant times. *See* Complaint ¶ 4. SWC is a limited partnership. *See id.* ¶ 7. United States Cellular Corporation ("U.S. Cellular") is a corporation which provides personal cellular telephone services. *See* Schultz Statement of Facts (docket no. 23-1) ¶ 2.

4

## B. Dispute

The alleged debt in the instant action arose from a contract Schultz had with U.S. Cellular, which "included financing for each of the wireless [tele]phones under the contract and divided payments for the purchase of the [tele]phones into monthly installments." *Id.* ¶ 3. In each bill from U.S. Cellular, Schultz was charged a "Device Financing Fee" for each telephone covered by the contract. *See* "Appendix to Plaintiff's Motion for Summary Judgment" ("Schultz Appendix") (docket no. 23-3) at 3. At some point, Schultz became delinquent on the account, and the matter was referred to SWC for resolution. *See* SWC Motion at 1.

On April 15, 2015, SWC sent Schultz a letter ("April 15, 2015 Letter") stating that the "account has been assigned to [SWC] for collection" and notifying him that "[t]he balance listed is due in full." *See* SWC Motion Exhibit C (docket no. 25-3) at 1. The April 15, 2015 Letter also notified Schultz of his ability to dispute the validity of the debt within thirty days and stated that, upon receipt of a dispute and request for validity, SWC would "obtain verification of the debt . . . and mail [Schultz] a copy of such . . . verification." *Id.* On April 27, 2015, Schultz sent a letter via certified mail to SWC ("April 27, 2015 Letter"). *See* Complaint Exhibit B (docket no. 2-2) at 2. SWC received the April 27, 2015 Letter on April 30, 2017. *See* SWC Motion at 1; *see also* Complaint Exhibit C (docket no. 2-3) at 2-3. In relevant part, the April 27, 2015 Letter reads as follows:

> I dispute the alleged debt that you refer to in your letter dated April 15, 2015. You may not assume the debt is valid. I refuse to pay. Validation is requested. Send all documentation that validates your claim.
>
> . . .
>
> You must cease all collection activities until you comply. All calls from you are inconvenient. All established business

5

relationships are severed.    All prior express consent is
revoked.

Complaint Exhibit B at 2.

On May 13, 2015, SWC's collections department sent Schultz a letter ("May 13, 2015 Letter") stating that it had "[e]nclosed . . . the information [he] requested" on the account.[1]  *See* SWC Motion Exhibit D (docket no. 25-4) at 1.  The May 13, 2015 Letter further states, "Please remit the balance in full to our office upon receipt of this letter." *Id.*  Additionally, the May 13, 2015 Letter states, at the bottom of the letter, "This is an attempt to collect a debt by a debt collector.  Any information obtained will be used for that purpose."  *Id.* (formatting omitted).  Following the May 13, 2015 Letter, SWC did not contact Schultz again regarding the alleged debt in the over eleven months prior to Schultz filing the instant action.  *Cf.* SWC Motion at 1 (stating that "[i]n response to SWC's validation letter, Plaintiff filed suit"); *see also generally* Schultz Statement of Facts (not alleging that SWC continued its collection attempts after the May 13, 2015 Letter).

## C.  *SWC's Policies*

SWC maintains policies that ensure its compliance with the FDCPA and other relevant state laws such as the IDCPA.  *See* SWC Motion Exhibit A (docket no. 25-1) at 2 ("SWC maintains policies and procedures to comply with the . . . [FDCPA] and all relevant state and federal laws and regulations.").  When SWC receives communications from a debtor, its "employees are trained to . . . determine whether the [correspondence] is a cease and desist, notice of attorney representation, a written dispute, a request for validation, [or] other types of correspondence."  *Id.*  SWC's policy covering "[p]rocessing

---

[1] Though the parties have not provided the court with the alleged verification of Schultz's account, they do not appear to dispute that the May 13, 2015 Letter actually contained the requested verification.  Construing the facts in the light most favorable to the non-moving party, the court assumes that such verification was included in the May 13, 2015 Letter and was sufficient for purposes of the FDCPA and Iowa law.

6

written disputes" requires SWC employees to place restrictions on the contacts that SWC may have with a debtor upon receipt of a written dispute letter. *See* SWC Motion Exhibit E (docket no. 27) at 1-2.

## VI. ANALYSIS

Schultz argues that he is entitled to summary judgment on his claims because it is undisputed that SWC sent him a communication demanding payment of the outstanding debt after he made a cease communication directive and requested validation of the debt. *See* Brief in Support of the Schultz Motion (docket no. 23-2) at 3-7. Similarly, Schultz argues that he is entitled to summary judgment on his IDCPA claim because the facts conclusively demonstrate that SWC violated the FDCPA. *See id.* at 7-10. SWC argues that Schultz has not established that summary judgment is appropriate because Schultz cannot demonstrate that he has suffered an "injury in fact" sufficient to establish standing under Article III of the United States Constitution. *See* SWC Resistance at 2-5. SWC also argues that Schultz cannot demonstrate that the alleged debt is "debt" for purposes of the FDCPA and IDCPA. *Id.* at 5-6. SWC further asserts that Schultz cannot establish a prima facie case of an FDCPA violation and, even if he could, SWC is shielded from liability because the violation was the result of a bona fide error. *Id.* at 7-11.

SWC argues that it is entitled to summary judgment on largely the same grounds as offered in resistance to the Schultz Motion. Specifically, SWC reiterates that Schultz cannot establish that he suffered an injury in fact and that any violation occurred as the result of a bona fide error. *See* SWC Motion at 3-5, 14-16. SWC further argues that it, in fact, complied with the FDCPA because it sent a verification letter to Schultz after receiving a request for one and conducted no collection activities in the interim. *Id.* at 5-9. SWC also asserts that Schultz has waived his cease-communication directive by requesting validation, and, therefore, SWC did not violate the FDCPA by sending the May 13, 2015 Letter. *Id.* at 9-11. SWC contends that any violation of the FDCPA was *de minimis*, and

thus no award of damages is appropriate. *Id.* at 13-14. Finally, SWC argues that, because it has not violated the FDCPA, the court should decline to exercise its supplemental jurisdiction over the IDCPA claim. *Id.* at 16-17. Schultz argues that SWC is not entitled to summary judgment because SWC could easily have complied with all relevant provisions of the FDCPA by providing a verification without an accompanying demand for payment. *See* Schultz Resistance at 4. Schultz also argues that he has standing to bring his claim because the FDCPA provides a private right of action, and because the FDCPA's protections are similar to the common law rights against invasions of privacy. *Id.* at 8-12. Schultz further asserts that SWC cannot establish the bona fide error defense because it cannot demonstrate the existence of an error, that such error was unintentional or that the procedures SWC maintained were reasonably calculated to eliminate the error. *Id.* at 14-18.

### A. *Applicable Law*

The FDCPA was enacted to protect consumers from "the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). The FDCPA does so by restricting the manner in which a debt collector can communicate with a consumer during an attempt to collect debt. For example, the FDCPA prohibits the debt collector from contacting a consumer "at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer" and directs debt collectors to solely communicate with the consumer's attorney if the consumer is represented by one. *Id.* § 1692c(a)(1), (a)(2). The FDCPA further provides: "If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt . . . ." *Id.* § 1692c(c). The FDCPA further states that a consumer may dispute the

8

debt upon receiving a communication from a debt collector attempting to collect the debt and, in such an event,

> the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

*Id.* § 1692g(b).

Similarly, the IDCPA makes it unlawful for a debt collector to "collect or attempt to collect a debt by means of an illegal threat, coercion or attempt to coerce." Iowa Code § 537.7103(1). The IDCPA defines "an illegal threat, coercion or attempt to coerce" as, among other things, "[a]n action or threat to take an action prohibited by this chapter or any other law." *Id.* § 537.7103(1)(f).

Upon proving a violation of the FDCPA or IDCPA, a plaintiff is entitled to recover both actual and statutory damages. Under the FDCPA, the measure of statutory damages is set to the court's discretion but cannot exceed $1,000. *See* 15 U.S.C. § 1692k(a)(2)(A). Courts awarding statutory damages consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." *Id.* § 1692k(b)(1). In contrast, statutory damages under the IDCPA are bound by both a statutory minimum and maximum: an award must be "not less than [$100] nor more than [$1,000]." Iowa Code § 537.5201(1)(a). "In assessing the amount of the penalty [under the IDCPA], the court may consider the frequency or persistency of the violations." *Pub. Fin. Co. v. Van Blaricome*, 324 N.W.2d 716, 726 (Iowa 1982).

Both the FDCPA and the IDCPA provide a defense against liability in the event that a debt collector violates the statute as the result of a bona fide error. *See* 15 U.S.C. § 1692k(c); Iowa Code § 537.5201(7). The relevant provisions of the two statutes are

substantially similar. The FDCPA provides that "[a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."[2] 15 U.S.C. § 1692k(c).

The court shall first address whether Schultz has standing to pursue his claims. The court shall then determine whether summary judgment in favor of either party is appropriate on Schultz's FDCPA and IDCPA claims—considering whether there exists any genuine dispute of material fact regarding whether SWC violated the FDCPA and IDCPA and, if so, whether SWC can establish its bona fide error defense. Finally, if the court finds that a violation has occurred, the court shall consider the proper award of damages.

### B. Standing

Standing is a constitutional requirement, ensuring that courts hear only "those disputes which are appropriately resolved through the judicial process." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). "[T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent . . . .'" *Id.* (internal citations omitted); *see also ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 958 (8th Cir. 2011) (same). Second, the injury and the conduct at issue must be casually connected. *See Lujan*, 504 U.S. at 560. Finally, a decision in the plaintiff's favor "must be 'likely,'" to redress the injury. *Id.* at 561

---

[2] The IDCPA states: "A person may not be held liable in any action brought under this section for a violation of this chapter if the person shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error nothwitstanding the maintenance of procedures reasonably adapted to avoid the error." Iowa Code § 537.5201(7).

(quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 43 (1976)). "[T]he party invoking federal jurisdiction bears the burden of establishing [the] elements" of standing. *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007) (quoting *Lujan*, 504 U.S. at 561).

Here, SWC only contends that Schultz cannot establish the requisite injury in fact. *See* SWC Motion at 3-5; SWC Resistance at 2-5. SWC argues that a mere technical or "bare procedural" violation of the FDCPA and IDCPA does not constitute an injury in fact. *See* SWC Motion at 5. SWC cites to the FDCPA's Congressional findings and implies that any injury Schultz suffered is not the type of injury that Congress meant to remedy when passing the FDCPA. *See id.* at 4 (quoting 15 U.S.C. § 1692(a)). SWC argues that the fact that the FDCPA authorizes civil liability and private enforcement alone does not alone establish standing where a plaintiff fails to demonstrate the existence of an actual injury. *Id.* at 5. Schultz, however, contends that "Congress can identify legally protected interests by creating new private rights" and that violation of the rights granted by a statute like the FDCPA creates an injury in fact. *See* Schultz Resistance at 8. He further argues that his rights under the FDCPA were violated by the demand for payment in the May 13, 2015 Letter. *Id.* at 9. Finally, he analogizes the rights protected by the FDCPA to those granted by the common law, to which courts look to determine whether an injury in fact exists. *Id.* at 9-10.

In *Spokeo v. Robins*, the Supreme Court determined that "a bare procedural violation, divorced from any concrete harm, [does not] satisfy the injury-in-fact requirement of Article III." ___ U.S. ___, ___, 136 S. Ct. 1540, 1549 (2016). In *Spokeo*, the plaintiff brought suit under the Fair Credit Reporting Act ("FCRA"), which requires consumer reporting agencies to follow certain procedures to ensure the accuracy of consumer reports and to make certain disclosures to providers and users of consumer information. *See id.* at 1544-45. After learning that the information about him on a

11

computerized report generated by the defendant was inaccurate, the plaintiff sued under the FCRA. *Id.* The Supreme Court reversed the Ninth Circuit Court of Appeals's ruling that a statutory violation alone is sufficient to establish an injury in fact. *Id.* The Supreme Court reasoned that "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 1549. In other words, merely because Congress creates a private right to sue does not mean that all violations, no matter how trivial or inconsequential, generate a case or controversy. For example, the Supreme Court stated that failure to provide the required notice to a user of the defendant's information would technically violate the statute, but if all of the information reported therein were accurate there would be no harm. *Id.* at 1550. Similarly, an incorrect zip code on such a report, though perhaps a violation of the statute, likely cannot alone work any concrete harm. *Id.*

However, the Supreme Court noted that a "concrete" harm need not be "tangible." *Id.* at 1549. "Although tangible injuries are perhaps easier to recognize, . . . intangible injuries can nevertheless be concrete." *Id.* The Supreme Court further stated that the risk of real harm can indeed satisfy the requirement of concreteness. *Id.* In some circumstances, "a plaintiff . . . need not allege any *additional* harm beyond the one Congress has identified" in order to establish an injury in fact. *Id.*

The court finds that Schultz has standing to pursue his claim. SWC's argument that Schultz has not alleged a harm similar to those listed by the Congressional findings in the FDCPA is not well taken. That Schultz did not suffer one of those specified harms does not deprive him of standing to pursue a violation of the FDCPA. Schultz suffered a concrete harm when he received a communication that allegedly violated the rights protected by the statute. The FDCPA was enacted to curb abusive debt collection practices and does so, in part, by restricting the manner and timing of communications between debt

12

collectors and consumers. *See* 15 U.S.C. § 1692c(a)(1), (a)(2), (c). Here, Schultz alleges that he received such a communication. Admittedly, Schultz did not suffer any tangible harm from the receipt of the May 13, 2015 Letter—but a tangible harm is not required to confer standing. *See Spokeo*, 136 S. Ct. at 1549. The harm suffered here was concrete and particularized. Additionally, as Schultz argues, the protections afforded by the FDCPA are similar to those secured by the common law right of privacy. *See, e.g.*, Restatement (Second) of Torts § 652B cmt. a (noting that the right of privacy concerns "intentional interference with [another's] interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable man"). In short, where, as here, Congress has put in place substantive protections in furtherance of the legislative goal and a plaintiff suffers harm in the manner that such substantive protections were intended to prevent, the court does not view a plaintiff as needing to "allege any additional harm beyond the one Congress has identified." *Spokeo*, 136 S. Ct. at 1549 (emphasis omitted).

This conclusion is bolstered by the Eighth Circuit Court of Appeals's interpretation of *Spokeo* as applied to the FDCPA. In *Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685 (8th Cir. 2017). In *Demarais*, the Eighth Circuit considered a factual situation similar to the one currently before the court. The plaintiff in *Demarais*, among other things, received a letter from a debt collector "attempt[ing] to collect a debt not owed in violation of [15 U.S.C.] § 1692f(1)." *Id.* at 691. Like here, the Eighth Circuit recognized that there were no tangible harms stemming from the letter. *Id.* The Eighth Circuit reasoned that "Congress recognized that abusive debt collection practices contribute to harms that can flow from mental distress" and, therefore, "created a statutory right" to be free from such practices. *Id.* at 692. The violations of the FDCPA, "directed at [the plaintiff] and tending to cause reasonable people mental distress, create the risk of real, concrete harms" sufficient to establish an injury in fact. *Id.* Such reasoning is persuasive here as well.

13

Congress created a statutory right to be free from abusive attempts to collect on debt and provided consumers the right of repose from such communications by invoking a cease-communications directive. *See* 15 U.S.C. § 1692c(c). A violation of such right creates the risk of real, concrete harms. Accordingly, the court shall deny the SWC Motion with respect to standing.

### C. FDCPA

Schultz argues that the undisputed facts establish that SWC violated the FDCPA because SWC is a debt collector, Schultz is a consumer and the alleged monies owed constitute a "debt" as defined the statute. *See* Brief in Support of the Schultz Motion at 3-4. Schultz argues that there are no issues of material fact regarding whether SWC violated 15 U.S.C. § 1692c(c) because the evidence in the record conclusively demonstrates that SWC made a demand for payment on him after receiving a refusal to pay. *Id.* at 5. Schultz further argues that SWC's communication does not fall within any statutory exceptions for communication after receiving a refusal to pay. *Id.* at 6-7.

SWC argues that it is entitled to summary judgment on the FDCPA claim because its communication occurred in direct response to Schultz's request for verification of the debt pursuant to 15 U.S.C. § 1692g, which impliedly waived his cease communications directive. *See* SWC Motion at 9-11. SWC further argues that, even if it violated the FDCPA, it is entitled to summary judgment because the bona fide error defense excuses an unintentional violation that was made in a good-faith effort to comply with the dictates of § 1692g and that occurred despite SWC's policy reasonably aimed at preventing offending communications with consumers. *Id.* at 14-16.

#### 1. Prerequisites

The FDCPA defines a "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). A "debt collector" under the FDCPA means "any person who uses any instrumentality of interstate commerce or the mails in

14

any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* § 1692a(6). The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." *Id.* § 1692a(5).

Here, the court finds that Schultz is a consumer, SWC is debt collector and the obligation to U.S. Cellular was a debt for purposes of the FDCPA. Although SWC disputes Schultz's status as a consumer, its status as a debt collector and the obligation's status as a debt, the court finds that Schultz is entitled to summary judgment on these issues because SWC has not and cannot demonstrate the existence of a genuine dispute as to the facts supporting these conclusions. Rather, SWC merely states, in its response to the Schultz Motion Statement of Facts, that it "object[s] to, and require[s] supporting proof" of the factual statements underlying the facts outlining the status of the parties and the obligation under the FDCPA. *See* SWC Resistance at 1. However, SWC does not point to any evidence in the record drawing those facts into question, and its bare denials of the same fail to raise a genuine dispute of material fact. *See Torgerson*, 643 F.3d at 1042 (noting that a nonmovant bears the burden of "submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial'" (quoting *Celotex Corp.*, 477 U.S. at 324)); *Anuforo*, 614 F.3d at 807 (noting that "self-serving allegations and denials are insufficient to create a genuine issue of material fact"). SWC admitted in its answer that it is a "debt collector" under the FDCPA and that Schultz is a "consumer." *See* Answer ¶¶ 9, 11. Further, SWC itself is aware that Schultz's obligations arise out of a contract with U.S. Cellular, as it acknowledged the same in both the April 15, 2015 Letter and May 13, 2015 Letter. *See* SWC Motion Exhibit C at 1; SWC Motion Exhibit D at 1. Schultz has also submitted an affidavit stating that the obligation to U.S. Cellular

arose "from personal cellular telephone services." *See* Schultz Motion Appendix (docket no. 23-3) at 2. SWC's self-serving allegations and denials cannot demonstrate the existence of a genuine dispute as to a material fact.

SWC argues that the court should disregard Schultz's affidavit because it is a "sham" affidavit that was "clearly drafted by an attorney" and because it fails to set forth specific facts regarding the status of the parties and the obligation under the FDCPA. *See* SWC Resistance at 2. However, the "sham" affidavit doctrine is inapplicable to the instant action. This rule is meant to prevent "a party who has been examined at length on deposition" from "rais[ing] an issue of fact simply by submitting an affidavit contradicting his own earlier testimony." *City of St. Joseph v. Sw. Bell Tel.*, 439 F.3d 468, 475-76 (8th Cir. 2006) (quoting *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365 (8th Cir. 1983)). Here, no such contradiction has occurred. Schultz has consistently stated that the obligation was for household purposes throughout the course of this litigation.

Furthermore, the court is untroubled by Schultz's counsel's assistance in drafting Schultz's affidavit. The court does not view it as unusual that counsel would assist his or her less sophisticated client in drafting an affidavit to avoid legal pitfalls such as making admissions against interest. Most importantly, and as the court has already noted, SWC points to no actual inaccuracies or misrepresentations in the affidavit. It is a sworn statement made under penalty of perjury. Though SWC complains that it is too conclusory and contains no particular factual allegations, the court finds it sufficient. The relevant portion of the affidavit states: "The alleged obligation arises from personal cellular telephone services, including financing the purchase of wireless cellular [tele]phones." Schultz Motion Appendix at 2. Such statement sets out particular facts supporting Schultz's contention that the obligation constitutes a "debt" under the FDCPA. Accordingly, the court shall consider the affidavit as evidence supporting the court's

preliminary finding that Schultz has established the prerequisites to suit: that he is a consumer, SWC is a debt collector and the obligation is a debt under the FDCPA.

## 2. *Section 1692c violation*

The court finds that there is sufficient undisputed evidence in the record to raise the specter of a violation of 15 U.S.C. § 1692c(c). It is beyond dispute that the April 27, 2015 Letter contained an unambiguous dispute of the debt and refusal to pay. *See* Complaint Exhibit B at 2. The April 27, 2015 Letter specifically states that Schultz "dispute[s] the alleged debt" and that he "refuse[s] to pay." *Id.* It is also beyond dispute that the May 13, 2015 Letter attempts to collect on the debt. *See* SWC Motion Exhibit D at 1. The May 13, 2015 Letter explicitly states: "Please remit the balance in full to our office upon receipt of this letter." *Id.* at 1. The FDCPA is clear that, "[i]f a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the customer, the debt collector shall not communicate further with the consumer with respect to such debt" save for certain exceptions that the court will address below. 15 U.S.C. § 1692c(c). In response, SWC relies on 15 U.S.C. § 1692g, which requires a debt collector to cease communications with a consumer once the consumer notifies the debt collector that they dispute the debt or request verification of the same "until the debt collector obtains verification of the debt . . . and a copy of such verification . . . is mailed to the consumer by the debt collector." *Id.* § 1692g(b). SWC contends that Schultz's request for verification under § 1692g essentially opened the door for further collection activities, working a waiver of Schultz's § 1692c rights. The court disagrees.

The court does not view the waiver of one set of rights under the FDCPA as a wholesale waiver of another set of rights. It would be anomalous that a request for § 1692g verification would enact a complete waiver of a § 1692c cease communications directive—to so hold would do violence to the rights created by the two statutory sections,

17

one which gives consumers the right to a verification of their debt and the other which gives consumers the right to be free from bothersome communications. *See Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 466-67 (2004) (noting that "[s]tatutory construction is a holistic endeavor" and that "[a] provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme" (internal quotation marks and citations omitted)); *Minn*. ex rel. *N. Pac. Ctr., Inc. v. BNSF Ry. Co.*, 686 F.3d 567, 572 (8th Cir. 2012) ("When engaging in statutory interpretation we must 'read and construe the statute as a whole, giving effect wherever possible to all of its provisions, and interpret[ing] each section in light of the surrounding sections to avoid conflicting interpretations." (alteration in original) (quoting *Eclipse Architectural Grp., Inc. v. Lam*, 814 N.W.2d 692, 701 (Minn. 2012))). Thus, the court's reading of the FDCPA will attempt to give effect to both sections, so as not to render either section's protections superfluous.

SWC relies on *Clark v. Capital Credit & Collection Servs., Inc.*, to argue that a consumer can waive his or her § 1692c rights by requesting validation under § 1692g. 460 F.3d 1162 (9th Cir. 2006). In *Clark*, the Ninth Circuit held that "a debtor may waive the rights created by a cease communication directive" if he or she does so knowingly and voluntarily. *Id.* at 1170-71. To determine whether a waiver was knowing and voluntary, the court examines the scope of the purported waiver through the lens of the least sophisticated debtor. *See id.* at 1171. For example, in *Clark*, the plaintiff contacted the debt collector's attorney to request information about the alleged debt but received a return telephone call from another of the debt collector's employees who was assigned to collect on the account. *See id.* at 1167. The Ninth Circuit held that it was clear that the plaintiff had waived her cease communications directive as to the debt collector's attorney because "it is obvious that even the least sophisticated debtor would recognize that [the plaintiff's] request for information constituted consent for . . . [the debt collector's] attorney[] to

18

return [the plaintiff's] telephone call in order to provide the specific information she requested." *Id.* at 1172. What the Ninth Circuit found less clear was whether the plaintiff waived the cease communications directive as to the collections agent that ultimately returned the plaintiff's telephone call. *Id.* The Ninth Circuit stated that the focus of the inquiry must be on whether it was "clear from [the plaintiff's] request for information that she consented to a return telephone call from *any* debt collector?" *Id.* Thus, the Ninth Circuit indicated that it was necessary to parse the scope of the purported waiver so as to leave a consumer's rights under § 1692c(c) as wholly intact as possible. *See id.*; *see also Mammen v. Bronson & Migliaccio, LLP*, 715 F. Supp. 2d 1210, 1217 (M.D. Fla. 2009) ("The Court notes that Plaintiff's request for verification of the debt is a wavier of the 'cease communication' directive with respect to the verification of the debt.").

The court finds that *Clark*'s reasoning is persuasive. However, rather than supporting SWC's interpretation of the FDCPA, it supports Schultz's allegation of a violation. Here, Schultz undoubtedly and voluntarily waived the cease communications directive as to the verification of the debt by unambiguously requesting validation. *See* Complaint Exhibit B at 2 ("Validation is requested. Send all documentation that validates your claim."). However, the least sophisticated consumer would not thereby apprehend or foresee a complete waiver of his or her § 1692c(c) cease communications directive or expect this limited waiver to thereby open the door to further collection efforts. Thus, the inclusion of the request to "remit the balance in full" to SWC, alongside the warning that the May 13, 2015 Letter was "an attempt to collect a debt by a debt collector," outstripped the waiver that SWC received. *See* SWC Motion Exhibit D at 1.

Despite SWC's contention that it was merely complying with § 1692g when it sent the May 13, 2015 Letter, SWC could have complied with both §§ 1692g and 1692c by, for example: (1) completely cutting off communications and abandoning collection of the debt, *see Marino v. Hoganwillig, PLLC*, 910 F. Supp. 2d 492, 496 (W.D.N.Y. 2012)

19

("[T]he statute only prohibits further action on the debt without validation, it does not require validation . . . ."); (2) sending the verification pursuant to § 1692g without an accompanying demand for payment, as discussed above; or (3) sending the verification pursuant to § 1692g while making a communication permissible under § 1692c(c)(1)-(c)(3).[3] *See* Schultz Resistance at 5. There is nothing in the FDCPA that would permit SWC to ignore one provision of the FDCPA by complying with another. The parties provide no authority suggesting the same and the court is aware of none. Because it was possible for SWC to comply with both §§ 1692g and 1692c, its failure to do so establishes that a violation of the FDCPA occurred. Thus, unless SWC can establish its bona fide error defense, the court shall grant summary judgment in favor of Schultz.

### 3. *Bona fide error defense*

As the court discussed above, the bona fide error defense prevents a debt collector from being held liable under the FDCPA, even if a violation technically occurred. *See* 15 U.S.C. § 1692k(c). In order to establish the bona fide error defense, a debt collector must establish: "that its FDCPA violation was unintentional and was caused by an objectively bona fide error (*i.e.*, one that is plausible and reasonable) made despite the use of procedures reasonably adapted to prevent that specific error." *Wilhelm v. Credico, Inc.*, 519 F.3d 416, 420 (8th Cir. 2008); *see also Beck v. Maximus, Inc.*, 457 F.3d 291, 297-98

---

[3] 15 U.S.C. § 1692c(c) provides three exceptions to the cease communications directive for communications from the debt collector: (1) "advis[ing] the consumer that the debt collector's further efforts are being terminated"; (2) notifying "the consumer that the debt collector . . . may invoke specified remedies which are ordinarily invoked by such debt collector"; or (3) notifying "the consumer that the debt collector . . . intends to invoke a specified remedy." SWC does not seriously contend that the May 13, 2015 Letter's request for payment fits within any of these established exceptions. *See, e.g.*, SWC Motion at 9-10 (listing the exceptions under § 1692c(c) but failing to argue that such exceptions apply here). It is clear that the request for payment in the May 13, 2015 Letter did not provide a specific remedy that SWC may or intended to invoke. Thus, none of the exceptions apply.

20

(3d Cir. 2006) (listing the elements as follows: "(1) the alleged violation was unintentional, (2) the alleged violation resulted from a bona fide error, and (3) the bona fide error occurred despite procedures designed to avoid such errors").

In order to meet the first part of the test, "[t]he debt collector must only show that the violation was unintentional, not that the communication itself was unintentional. To hold otherwise would effectively negate the bona fide error defense." *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). An error that is "bona fide," under the second part of the test, is simply an error that is sincere, made in good faith and is not fraudulent. *See bona fide*, Black's Law Dictionary (10th ed. 2014) ("1. Made in good faith; without fraud or deceit. 2. Sincere; genuine."); *see also Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 538 (7th Cir. 2005) (noting that a bona fide error is "an error made in good faith; a genuine mistake, as opposed to a contrived mistake."). As to the third element, courts have adopted a two-step inquiry. *See Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1273-74 (11th Cir. 2011). First, the court must determine "whether the debt collector 'maintained'—*i.e.*, actually employed or implemented—procedures to avoid errors." *Id*. at 1274 (quoting *Johnson v. Riddle*, 443 F.3d 723, 729 (10th Cir. 2006)). Second, the court determines "whether the procedures were 'reasonably adapted' to avoid the specific error at issue." *Id*. (quoting *Johnson*, 443 F.3d at 729). This is a fact-intensive inquiry, and courts have not identified any "definitive list of procedures, or even universally applicable parameters, by which to assess the third element." *Id*. Courts have stated that "§ 1692k(c) does not require debt collectors to take every conceivable precaution to avoid errors; rather, it only requires reasonable precaution." *Kort*, 394 F.3d at 539.

However, the bona fide error defense is not available where the debt collector makes a mistake of law. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 604-05 (2010) ("We therefore hold that the bona fide error defense in

§ 1692k(c) does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of the requirements of the statute."). Instead, the bona fide error defense is aimed at "measures designed 'to avoid errors like clerical or factual mistakes.'" *Owen*, 629 F.3d at 1272 (quoting *Jerman*, 559 U.S. at 587).

Here, the court cannot find that SWC is entitled to the bona fide error defense. To the contrary, the court finds that SWC has failed in its initial burden of demonstrating that there exists no genuine issues of material fact, entitling it to judgment as a matter of law. *See Torgerson*, 643 F.3d at 1042. Similarly, SWC has failed in its burden to demonstrate that Schultz is not entitled to summary judgment on the FDCPA claim by raising a genuine issue of material fact regarding whether the bona fide error defense is available. In support of its bona fide error defense, SWC as provided account notes for Schultz's account, an affidavit from Jeff Hazzard, SWC's chief operating officer and chief information officer, and SWC's policy for "Processing Written Disputes." *See* SWC Motion Exhibit A (docket no. 25-1) (Hazzard affidavit); SWC Motion Exhibit B (docket no. 25-2) (Schultz account notes); SWC Motion Exhibit E (SWC internal policy). However, after reviewing the materials, the court finds that SWC has not carried its burden to demonstrate that it is entitled to the bona fide error defense as a matter of law, and the facts as established in the record fail to raise a genuine dispute of material fact as to whether the defense applies.

Initially, the court notes that SWC did not provide any evidence regarding whether its internal policy was followed in this instance. Hazzard merely states that "SWC's employees are trained to read all correspondence received by SWC and determine whether the letter is a cease and desist, . . . a written dispute, a request for validation, and other types of correspondence. In the event a letter is determined to be a dispute letter, the . . . [policies at issue] apply." SWC Motion Exhibit A at 2. Hazzard does not state that SWC trains its employees on the policy at issue nor does he state that the policy was followed

22

here. *See id.* at 2-3. Instead, Hazzard equivocally states that, "[i]f it is found that the letter received by SWC in this case qualifies as a dispute letter, the . . . [policy] should have been followed." *Id.* at 3. Similarly, the account notes provided to the court do nothing to clarify the nature of the error. The account notes appear to be a print off of an electronic log of information related to Schultz's account. *See* SWC Motion Exhibit B at 1-2. The account notes are filled with technical terms that the court is ill-equipped to decode, and SWC has provided no clarification as to the meaning of any of the terms therein. Finally, the court notes that the policy itself is largely unintelligible. It appears to be a step-by-step procedure for placing restrictions on a consumer's account in a computer-based record keeping system. *See* SWC Motion Exhibit E at 1-3. However, SWC has produced no evidence or testimony regarding the proper interpretation of such policy. On this record, a finder of fact would be left guessing as to the scope of the policy and what communications it would actually prohibit. This is insufficient to establish the bona fide error defense as a matter of law and fails to give rise to a genuine dispute of material fact regarding SWC's liability.

SWC has not provided sufficient information by which a rational trier of fact could find that the error was unintentional. Instead, the record is devoid of any information regarding SWC's belief that it was entitled to send the May 13, 2015 Letter with the request for payment included. While the law is clear that it is the violation that must be intentional, and not the communication itself, *see Lewis*, 135 F.3d at 402, the court cannot find that the request for payment in the May 13, 2015 Letter occurred as the result of an unintentional error. Instead, the evidence in the record does little to shed light on the circumstances surrounding its inclusion in the same. For example, there is no information in the record that SWC includes a request for payment in all of its verification letters that it mistakenly failed to remove in this case. Nor is there information that, had Schultz's account had a hold on it, the employee responsible for sending the verification letter would

23

or should have looked at Schultz's account before sending the verification to determine whether a further communication regarding payment would violate the policy—such as a policy discussing steps to be taken before further communications are made to a consumer after receiving a cease communications directive, or a policy discussing the sending of verification letters in general. Essentially, SWC has failed to establish that the error was unintentional.

In fact, the nature and course of the present litigation suggests that SWC does not believe it committed any error in sending the May 13, 2015 Letter. SWC has consistently maintained that it did not in fact violate the FDCPA when it included the request for payment in the FDCPA because it believed that Schultz had waived his § 1692c rights by requesting verification pursuant to § 1692g in the first instance. *See, e.g.*, SWC Motion at 5-11; SWC Resistance at 7-9. These arguments suggest that any violation on SWC's part was the result of a mistake of law, and not a bona fide error, because SWC believed it was entitled to send the May 13, 2015 Letter exactly as it did. Mistakes of law cannot support the bona fide error defense. *See Jerman*, 559 U.S. at 604-05.

Further, the record is devoid of evidence by which a finder of fact could determine whether any error was bona fide. While there is no evidence in the record suggesting that any error was made in bad faith or was contrived in any way, there is similarly no evidence in the record suggesting that the error was made in good faith. Instead, the record is agnostic as to SWC's "state of mind" when it made the error and no intent can be inferred from the limited facts before the court. Without more, the court cannot say that the error was bona fide.

Finally, the court is unconvinced that the third element of the bona fide error analysis can be met here. As to the first prong of the analysis, the court reiterates its original concern that it is unclear whether SWC actually employs the provided policy. While Hazzard states that employees are trained to screen incoming mail, he does not state

24

that they are trained on the policies, including the policy at issue, nor does he state that the policies are routinely followed. *See* SWC Motion Exhibit A at 2. The court cannot infer that the policies are implemented or followed from the other evidence in the record, as the account notes do not clearly state that the policy was followed in this instance. *See generally* SWC Motion Exhibit B.

As to the second prong, the court finds that the policy here was not reasonably calculated to prevent the specific violation that occurred here. Schultz argues that SWC's policy "say[s] nothing about removing requests for payments from future letters" sent to a consumer. Schultz Resistance at 17. The court agrees. As far as the court is able to ascertain, SWC's policy is merely a general restriction on future communications with a consumer after receiving a cease communications directive. *See* SWC Motion Exhibit A at 2 (Hazzard affidavit stating that, after receiving a cease communications directive, SWC places a hold on the consumer's account and marks the account to "restrict all communication," which "includes telephone calls and written correspondence"). SWC has provided no policy to prevent future communications that are permitted under the FDCPA from containing an improper demand for payment. For instance, SWC has provided no policy designed to screen future communications and remove offending language. While a debt collector is only expected to maintain reasonable precautions against violations, and need not take every conceivable precaution, such precautions must be aimed at the specific violation that occurred in the instant case. *See Owen*, 629 F.3d at 1274; *Kort*, 394 F.3d at 539. SWC has not made such a showing here.

Accordingly, the court finds that SWC has failed in its initial burden on summary judgment to provide evidence in the record demonstrating that no genuine dispute of material fact exists. Instead, the record here is devoid of evidence by which a reasonable fact finder could determine that the bona fide error defense should apply. The court does not doubt that the bona fide error defense could apply to a violation such as the one

currently before the court. However, on the limited record before the court here, it cannot say that even a genuine issue of material fact exists as to whether the defense applies. Accordingly, the court shall deny the SWC Motion with respect to the bona fide error defense. Additionally, SWC has failed to demonstrate a triable issue regarding its liability under the FDCPA with respect to the Schultz Motion.

### D. IDCPA

The IDCPA defines a "debt" as "an actual or alleged obligation arising out of a consumer credit transaction . . . or a transaction which would have been a consumer credit transaction . . . if a finance charge was made." Iowa Code § 537.7102(3). A "consumer credit transaction" includes "a consumer credit sale or consumer loan, or a refinancing or consolidation thereof." *Id.* § 537.1301(12). In turn, a "consumer credit sale" requires that the transaction meet all of the following requirements:

(1)     Credit is granted either pursuant to a seller credit card or by a seller who regularly engages as a seller in credit transactions of the same kind.

(2)     The buyer is a person other than an organization.

(3)     The goods, services or interest in land are purchased primarily for personal, family or household purpose.

(4)     Either the debt is payable in installments or a finance charge is made.

(5)     With respect to the sale of goods or services, the amount financed does not exceed [a] threshold amount.

*Id.* § 537.1301(13)(a). The IDCPA defines a "debt collector" as "a person engaging, directly or indirectly, in debt collection, whether for the person, the person's employer, or others." *Id.* § 537.7102(5).

Here it is beyond all serious doubt that this transaction is covered under the IDCPA. Credit was granted by U.S. Cellular, who regularly engages as a seller in credit transactions of this kind. *See* Brief in Support of the Schultz Motion at 8. Schultz is a

26

natural person and the goods and services in question were used for household purposes. *See, e.g.*, Part VI.B.1 *supra*. U.S. Cellular charged a "Device Financing Fee." *See* Schultz Appendix at 3. Further there is no doubt that the amount in controversy is less than the threshold amount established by regulation. *See* Brief in Support of the Schultz Motion at 9. Finally, SWC is undoubtedly a debt collector under the IDCPA. *Id.*; *see also* Answer ¶ 10. In fact, SWC does not appear to contest any of these prerequisite facts. It essentially seeks summary judgment on the theory that Schultz's "cause of action under the IDCPA is based on the alleged FDCPA violations" and that, because "SWC did not violate the FDCPA as 'any other law' under the IDCPA," it cannot be held liable under the IDCPA. SWC Motion at 12. In the alternative, SWC argues that the court should decline to assert supplemental jurisdiction over the IDCPA claim if it grants summary judgment on the FDCPA claim. *Id.* at 16-17.

The court shall continue to exercise jurisdiction over the IDCPA claim even though it granted summary judgment as to the FDCPA claim. 28 U.S.C. § 1367(c)(3) gives the court discretion in retaining jurisdiction over state law claims once the court has dismissed all claims over which it has original jurisdiction. *See also Shultz v. Buchanan*, 829 F.3d 943, 951 (8th Cir. 2016) ("A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." (alteration in original) (quoting *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009))). Factors such as judicial economy, the similarity between the causes of action and parallels between the FDCPA and IDCPA persuade the court that the entire dispute should be heard in the federal forum. *See Thomas v. United Steelworkers Local 1938*, 743 F.3d 1134, 1141 (8th Cir. 2014) (noting that the stage of the litigation and the "amount of time and judicial resources expended in th[e] case" as well as whether the principles of state law are "well-settled" are relevant considerations); *Brown v. Mortgage Elec. Registration Sys., Inc.*, 738 F.3d 926, 933 (8th Cir. 2013) (noting that courts

27

"should consider factors such as judicial economy, convenience, fairness, and comity" in exercising supplemental jurisdiction). Thus, the court shall retain jurisdiction over the IDCPA claim.

For the same reasons that the court found a violation of § 1692c of the FDCPA, the court finds that SWC violated § 537.7103(1) of the Iowa Code because it took "[a]n action . . . prohibited by . . . any other law." Iowa Code § 537.7103(1)(f); *see also* Part IV.B.2 *supra*. Additionally, for the same reasons that the court found that SWC was not entitled to the bona fide error defense under the FDCPA, the court finds that it is not entitled to the defense under the IDCPA. *See* Part IV.B.3 *supra*. The relevant provisions of the two chapters are the same in every material way. *Compare* 15 U.S.C. § 1692k(c), *with* Iowa Code § 537.5201(7). This fact, alongside the fact that Iowa courts have looked to the FDCPA in interpreting the IDCPA, suggests to the court that the outcome under either statute would be the same. *See, e.g.*, *Van Blaricome*, 324 N.W.2d at 724-25 (examining the legislative history of the FDCPA in interpreting the IDCPA).

### E. Damages

A prevailing plaintiff under both the FDCPA and IDCPA is entitled to actual and statutory damages. *See* 15 U.S.C. § 1692k(a)(2)(A); Iowa Code § 537.5201(1)(a). SWC argues that no damages should be awarded here because the violation was *de minimis*. SWC Motion at 12-14. Schultz does not appear to contest that he has not suffered any actual damages, and makes no argument regarding statutory damages. *See generally* Schultz Resistance. The court agrees that Schultz cannot demonstrate the existence of a genuine dispute of material fact regarding actual damages. *See* SWC Motion at 12 ("[Schultz] cannot provide any evidence that he was damaged from SWC's one alleged violation."). Schultz provides no evidence to rebut SWC's argument, thus, summary judgment as to actual damages is appropriate.

28

Though the court must assess statutory damages upon finding a violation, the court can decline to award statutory damages under the FDCPA if the court finds that the injury was *de minimis* after considering the frequency and persistence of the violation, the nature of the violation and the extent to which the violation was intentional. *See Lester E. Cox Med. Ctr., Springfield, Mo. v. Huntsman*, 408 F.3d 989, 993-94 (8th Cir. 2005). Here it is clear that the violation was *de minimis* and the nature of the injury was minimal. This was a single violation embedded in a communication that Schultz himself requested. This is not the prototypical case of a § 1692c violation, wherein a debt collector is constantly hounding a consumer with demands for payment after being told to stop. Except for the single violation here, SWC appears to have followed Schultz's request. Accordingly, the court declines to award Schultz any statutory damages under the FDCPA.

Under the IDCPA, there is a statutory minimum of $100 for statutory damages, and the court's discretion is guided by the same general principles as the federal award. *See Van Blaricome*, 324 N.W.2d at 726 (describing statutory damages as having "statutory minimum and maximum limits" and noting that courts "consider the frequency or persistency of the violations"). In this case, the court shall award the statutory minimum of $100 for the same reasons that it declined to award statutory damages under the FDCPA. Because the court has found that no genuine issue of material fact exists as to whether Schultz suffered actual damages, the violation he suffered was *de minimis* and statutory damages under the FDCPA are not appropriate, the total award is $100.

### VII. CONCLUSION

In light of the foregoing, it is hereby **ORDERED**:

(1)     The Schultz Motion (docket no. 23) is **GRANTED**;

(2)     The SWC Motion (docket no. 25) is **DENIED**; and

(3)     The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff Craig Schultz in the amount of $100. The trial date is vacated.

29

**IT IS SO ORDERED.**

**DATED** this 13th day of October, 2017.

LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA